# EXHIBIT B

Case 2:22-cv-06656-MJF Document 60-2 Filed 08/05/22 Page 1 of 10

# RESTRICTIVE COVENANTS AGREEMENT

**THIS RESTRICTIVE COVENANTS AGREEMENT (THE "AGREEMENT") IS A LEGAL AGREEMENT BETWEEN YOU (THE "EMPLOYEE") AND MARSH & MCLENNAN COMPANIES, INC., A DELAWARE CORPORATION ("MARSH MCLENNAN"), AND ITS AFFILIATES AND SUBSIDIARIES (COLLECTIVELY, THE "COMPANY"). PLEASE READ IT CAREFULLY. BY ACCEPTING THE AWARD (AS DEFINED BELOW) TO WHICH THIS AGREEMENT RELATES, YOU WILL BE EXPRESSLY AFFIRMING THAT YOU UNDERSTAND, ACCEPT AND AGREE TO BE BOUND BY THIS AGREEMENT.**

R E C I T A L S:

A. The Employee is employed by Marsh McLennan or one of its affiliates or subsidiaries (the "Employer").

B. The execution of this Agreement is required of any grantee of a stock option, stock unit, other equity-based award, restricted cash award, or other unvested award granted on or after February 1, 2022 under any plan of the Company or otherwise (each an "Award") and is a condition precedent to the exercise of any stock option or other Award and to any continuation or acceleration of the vesting of any Award following the Employee's separation from employment.

C. The Employee desires to enter into this Agreement in order to satisfy such conditions.

D. The consideration for the Employee's entering into this Agreement consists of each occurrence of a Consideration Event (as hereinafter defined), and the parties intend that this Agreement shall become effective upon the first such occurrence.

NOW, THEREFORE, the parties hereby agree as follows:

**1.     Effectiveness Of Agreement**

The Employee acknowledges and agrees that the execution of this Agreement is a condition precedent to any Consideration Event.

For purposes of this Agreement, a "Consideration Event" means an occurrence of any of the following events: (i) the granting to the Employee of an Award, (ii) the Employee's exercise of a stock option or other Award, or (iii) any continuation or acceleration of the vesting of an Award following the Employee's separation from employment as provided in the applicable Terms & Conditions of such Award.

**2.     Restrictive Covenants: Clients**

(a)     The Employee acknowledges and agrees that solely by reason of employment by the Company, the Employee has and will come into contact with and develop and maintain relationships with a significant number of the Company's clients and prospective clients

and have access to Confidential Information (as defined below) and trade secrets relating thereto, including those regarding the Company's clients, prospective clients and related information, and will have access to and the benefit of goodwill developed by the Company wih its clients.

(b) Consequently, the Employee covenants and agrees that in the event of separation from employment with the Company, whether such separation is voluntary or involuntary, the Employee will not, for a period of twelve (12) months following such separation, directly orthrough others:  (i) solicit clients of the Company for the purpose of selling or providing products or services of the type sold or provided by the Employee while employed by the Company; or (ii) induce clients or prospective clients of the Company to terminate, cancel, not renew, or not place business with the Company; or (iii) perform or supervise the performance of services or provision of products of the type sold or provided by the Employee while he or she was employed by the Company on behalf of any clients or prospective clients of the Company; or (iv) assist others to do the acts specified in Paragraphs 2(b) (i)-(iii).  This restriction shall apply only to those clients or prospective clients of the Company with which the Employee had contact or about which the Employee obtained Confidential Information or trade secrets during the last two (2) years of his or her employment with the Company or its predecessors.  For the purposes of Section 2, the term "contact" means interaction between the Employee and the client which takes place to further the business relationship, or making (or assisting or supervising the making of) sales to or performing or providing (or assisting or supervising the performance or provision of) services or products for the client on behalf of the Company.  For purposes of Section 2, the term "contact" with respect to a "prospective" client means interaction between the Employee and a potential client of the Company which takes place to obtain the business of the potential client on behalf of the Company.  It shall not be a defense to a claim that this provision has been breached that Employee's new employer or entity for which Employee is performing services has previously solicited or served the client.  Employee shall not engage in any subterfuge to circumvent this prohibition, including, but not limited to accompanying others on calls to the client, contacting the client with other persons, supervising other persons in soliciting or serving the client, providing Confidential Information to others to assist them in soliciting or serving the client, participating in developing presentations to be made to the client, or other similar activities.

3. **Restrictive Covenants:  Employees**

The Employee acknowledges and agrees that solely as a result of employment with the Company, and in light of the broad responsibilities of such employment which include working with other employees of the Company, the Employee has and will come into contact with and acquire Confidential Information and trade secrets regarding the Company's other employees. Accordingly, both during employment with the Company and for a period of twelve (12) months thereafter, the Employee shall not, either on the Employee's own account or on behalf of any person, company, corporation, or other entity, directly orthrough others, solicit, or endeavor to cause any employee of the Company with whom the Employee, during the last two (2) years of his or her employment with the Company, came into contact for the purpose of soliciting or servicing business or about whom the Employee obtained Confidential Information to leave employment with the Company.

**4.     Restrictive Covenants:  Confidentiality And Non-Disparagement**

(a)     The Employee agrees that he or she will not, during his or her employment with the Company, or at any time after such employment terminates, use for his or her own or another's purposes, or disclose to any other person or entity (other than in the proper course of employment with the Company) any Confidential Information.  This Section 4(a) shall not apply to any part of such Confidential Information that comes into the public domain otherwise than by reason of an unauthorized disclosure; or that is disclosed to the Employee on a non-confidential basis by a third party who is not bound by a duty of confidentiality.  "Confidential Information" includes but is not limited to:  (i) financial and business information relating to the Company, such as information with respect to costs, commissions, fees, profits, sales, markets, mailing lists, strategies and plans for future business, new business, product or other development, potential acquisitions or divestitures and new marketing ideas; (ii) product and technical information relating to the Company, such as product formulations, new and innovative product ideas, methods, procedures, devices, machines, equipment, data processing programs, software, software codes, computer models and research and development projects; (iii) client information, such as the identity of the Company's clients, the names of representatives of the Company's clients responsible for entering into contracts with the Company, the amounts paid by such clients to the Company, specific client needs and requirements, specific client risk characteristics, policy expiration dates, policy terms and conditions, information regarding the markets or sources with which insurance is placed and leads and referrals to prospective clients; (iv) personnel information, such as the identity and number of the Company's other employees and officers, their salaries, bonuses, benefits, skills, qualifications and abilities; (v) any and all information in whatever form relating to any client or prospective client of the Company, including but not limited to its business, employees, operations, systems, assets, liabilities, finances, products, and marketing, selling and operating practices; (vi) any information not included in (i) or (ii) above which the Employee knows or should know is subject to a restriction on disclosure or which the Employee knows or should know is considered by the Company's clients or prospective clients to be confidential, sensitive, proprietary or a trade secret or is not readily available to the public; or (vii) intellectual property, including inventions and copyrightable works.  Confidential Information is not generally known or available to the general public, but had been developed, compiled or acquired by the Company at its effort and expense. Confidential Information can be in any form, including but not limited to: verbal, written or machine readable, including electronic files.

(b)     Immediately upon the termination of employment with the Company for any reason, or at any time the Company so requests, the Employee will return or provide to the Company: (i) any originals and all copies of all files, notes, documents, slides (including transparencies), computer disks, printouts, reports, lists of the Company's clients or leads or referrals to prospective clients, and other media or property in the Employee's possession or control which contain or pertain to Confidential Information or trade secrets; (ii) all property of the Company, including, but not limited to, supplies, keys, access devices, cellphones, laptops, iPhones, iPads, books, identification cards, computers, telephones and other equipment; (iii) all passwords, passcodes, security PINs, biometrics, and/or any other information or means necessary for the Company to access property of the Company stored on any device or equipment in writing.  The Employee further agrees not to take any action (such as wiping or

deleting) at any time with respect to any electronic devices that would hinder the access of information by the Company. The Employee agrees that upon completion of the obligations set forth in this subparagraph, and if requested by the Company, the Employee will execute a statement declaring that he or she has retained no property of the Company or materials containing Confidential Information, nor has he or she supplied the same to any person, except as required to carry out his or her duties as an employee of the Company. A receipt signed by an Officer of the Employer itemizing the returned property is necessary to demonstrate that Employee has returned all such property to the Company.

(c) The Employee acknowledges and agrees that Employee is not authorized to access and use the Company's computer systems and protected computers, including laptop computers and Company PDA's, and the data contained therein, for personal gain or to benefit third parties (other than in the course of the Employee's performance of services for the Company or as expressly and specifically authorized by the Company) and that any such access or use is unauthorized.

(d) The Employee further agrees that, except as required by law, the Employee will not do or say (or omit to do or say) anything that is intended, or might reasonably be expected, to harm or disparage the Company or to impair its reputation, or the reputation of any of its services, products, officers or employees. This provision is not intended to abridge any obligations or rights otherwise provided by law.

(e) The Employee understands that under the federal Defend Trade Secrets Act of 2016, he or she shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to the Employee's attorney in relation to a lawsuit for retaliation against the Employee for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(f) The Employee further understands that nothing contained in this Agreement limits the Employee's ability to (i) file a charge and/or complaint or participate in a proceeding with the Equal Employment Opportunity Commission, the National Labor Relations Board, the Occupational Safety and Health Administration, the Securities and Exchange Commission, and/or any other federal, state, or local governmental agency or commission (collectively, the "Government Agencies"); or (2) exercise the Employee's rights under Section 7 of the National Labor Relations Act to engage in protected or concerted activity with other employees. The Employee also understands that this Agreement does not limit his or her ability to communicate with any Government Agencies or otherwise participate in any investigation or proceeding that may be conducted by any Government Agencies, including providing documents or other information, without notice to the Company. In addition, this Agreement does not limit the Employee's right to receive any award, monetary payment, and/or financial incentive from any Government Agencies (and not the Company) for information provided to said Government Agencies.

5. **Restrictive Covenants: Conflict Of Interest**

The Employee may not use his or her position, influence, knowledge of Confidential Information or trade secrets or the Company's assets for personal gain, except as specifically provided in this Agreement. A direct or indirect financial interest, including joint ventures in or with a supplier, vendor, customer or prospective customer without disclosure and the express written approval of the highest executive officer of the Employer is strictly prohibited and constitutes cause for dismissal.

6. **Employee's Acknowledgment**

The Employee hereby expressly acknowledges and agrees that (a) the restrictions and obligations set forth in and imposed by Sections 2, 3, 4 and 5 will not prevent the Employee from obtaining gainful employment in the Employee's field of expertise or cause the Employee undue hardship; and (b) the restrictions and obligations imposed on the Employee under Sections 2, 3, 4 and 5 are necessary to protect the legitimate business interests of the Company and are reasonable in view of the benefits and consideration the Employee has received or will receive from the Company from each Consideration Event.

7. **Equitable Relief**

In recognition of the fact that irreparable injury will result to the Company in the event of a breach by the Employee of his or her obligations under Section 2, 3, 4 or 5 of this Agreement, that monetary damages for such breach would not be readily calculable, and that the Company would not have an adequate remedy at law therefor, the Employee acknowledges, consents, and agrees that in the event of such breach, or the threat thereof, the Company shall be entitled, in addition to any other legal remedies and damages available, to (a) specific performance thereof and to temporary and permanent injunctive relief (without the necessity of posting a bond) to restrain the violation or threatened violation of such obligations by the Employee and persons acting for or in connection with the Employee and (b) recovery of all reasonable sums and costs, including attorneys' fees, expert witness fees, expenses and costs incurred by the Company in seeking to enforce the provisions of this Agreement.

8. **Severability**

The parties agree they have attempted to limit the scope of the post-employment restrictions contained herein to the extent necessary to protect Confidential Information and trade secrets, client relationships and goodwill. It is the desire and intent of the parties that the provisions of this Agreement shall be enforced to the fullest extent permissible under applicable law and public policies. Accordingly, if any particular portion of this Agreement shall be adjudicated to be invalid or unenforceable, this Agreement shall be deemed amended to delete therefrom such invalid portion, and reformed to the extent valid and enforceable. Such deletion and reformation shall apply only with respect to the operation of this Agreement in the particular jurisdiction as to which such adjudication is made.

**9.     Other Agreements and Obligations Survive**

Neither the Employee nor the Company intends to waive or release the applicability of any other more extensive legal or contractual obligations the Employee may owe the Company at any particular time, including, but not limited to, obligations under any employment agreement between the Employee and the Company, whether executed prior to this Agreement or at any time hereafter; provided, however, that this Agreement shall supersede all non-competition or non-solicitation agreements or provisions signed in connection with or as a condition to prior Awards.

Except as otherwise provided in this Section, the obligations of the Employee under this Agreement shall be independent of, and unaffected by, and shall not affect, other agreements, if any, binding the Employee which apply to the Employee's business activities during and/or subsequent to the Employee's employment by the Company, including any employment agreement between the Employee and the Company whether executed prior to this Agreement or at any time hereafter. The obligations under this Agreement also shall survive any changes made in the future to the employment terms of the Employee, including, but not limited to, changes in salary, benefits, bonus plans, job title and job responsibilities.

**10.    Employment Unaltered**

The Employee understands that this Agreement does not constitute a contract of employment and does not promise or imply that his or her employment will continue for any period of time. Unless otherwise agreed to under any employment agreement between the Employee and the Company whether executed prior to this Agreement or at any time hereafter, employment with the Company is "at will" and may be terminated either by the Employee or the Company at any time, with or without cause, and with or without notice.

**11.    Binding Effect; Assignment**

The Employee expressly consents to be bound by the provisions of this Agreement for the benefit of the Company or any of its subsidiaries or affiliates to whose employ he or she may be transferred without the necessity that this Agreement be re-signed at the time of such transfer. The Employee consents that any such subsidiary or affiliate may enforce this Agreement. Further, the rights of the Company hereunder may be assigned or, as applicable, shall pass by operation of law, without further consent of the Employee, at any time, to any successor in interest of the Company, or any portion thereof, by reason of merger, consolidation, sale, lease or other disposition of any or all of the assets or stock of the Company. This Agreement may be enforced by the Company's successors and assigns.

**12.    Governing Law and Choice of Forum**

The parties acknowledge that the Company is headquartered in New York, that senior members of the leadership team of the Company are based in New York, and that breach of this Agreement will cause injury in New York. This Agreement shall be governed by, and construed in accordance with, the law of the State of New York, without regard to its conflict of law provisions. The parties, being desirous of having any disputes resolved in a forum having a

substantial body of law and experience with the matters contained herein, agree that any action or proceeding with respect to this Agreement and the Employee's employment shall be brought exclusively in the Civil Court of the City of New York, New York County, or in the Supreme Court of the State of New York, New York County, or in the United States District Court for the Southern District of New York, or in any other court of competent jurisdiction in or for the State and County of New York, and the parties agree to the personal jurisdiction thereof.  The parties hereby irrevocably waive any objection they may now or hereafter have to the laying of venue of any such action in the said court(s), and further irrevocably waive any claim they may now or hereafter have that any such action brought in said court(s) has been brought in an inconvenient forum.  The Employee recognizes that, should any dispute or controversy arising from or relating to this agreement be submitted for adjudication to any court, arbitration panel or other third party, the preservation of the secrecy of Confidential Information or trade secrets may be jeopardized.  Consequently, the Employee agrees that all issues of fact shall be severed for trial without a jury.

### 13. Non-Waiver

The failure of either the Company or the Employee, whether purposeful or otherwise, to exercise in any instance any right, power, or privilege under this Agreement or under law shall not constitute a waiver of any other right, power, or privilege, nor of the same right, power, or privilege in any other instance.  Any waiver by the Company or by the Employee must be in a written or electronic instrument signed by either the Employee, if the Employee is seeking to waive any of his or her rights under this Agreement, or by the President or highest executive officer of the Employer, if the Company is seeking to waive any of its rights under this Agreement.

### 14. Modification; Agreement to Enter into Additional Agreements

No modification of this Agreement shall be valid unless made in a written or electronic instrument signed by both parties hereto, wherein specific reference is made to this Agreement, except as provided in Section 8; provided, however, that the Company may make changes to the Agreement that are favorable to the Employee (*e.g.*, to conform the provisions of this Agreement to changes in court decisions or legislation), without securing the written consent of Employee to the change.  Should Employee move to a different state or jurisdiction while employed by the Company or upon written request of the Company, Employee agrees to sign, without further consideration, upon direction by the Company, such further writings to effectuate the provisions of this Agreement as necessary to comply with applicable law.  Employee's failure to sign such additional agreements shall constitute a breach of this Agreement.

### 15. Cooperation

Both during the Employee's employment with the Company and after the termination thereof for any reason, the Employee agrees to provide the Company with such information relating to his or her work for the Company or others, as the Company may from time to time reasonably request in order to determine his or her compliance with this Agreement.

**16.** **Disclosure**

The Employee hereby specifically authorizes the Company to contact his or her future employers to determine his or her compliance with the Agreement or to communicate the contents of this Agreement to such employers. The Employee further specifically authorizes the Company to, in its sole discretion and without further permission from the Employee, furnish copies of the Agreement to any client or prospective client of the Company and indicate that the Employee has entered into this Agreement with the intention that the Company and each of its clients or prospective clients may rely upon his or her compliance with this Agreement.

**17.** **Headings**

Section headings are used herein for convenience or reference only and shall not affect the meaning of any provision of this Agreement.

# GRANT AGREEMENT

## Marsh & McLennan Companies, Inc.

**Name:** MICHAEL MACHUA MILLETT

**Employee ID:** 875101

**Grant Date:** 02/23/2022

**Award Type:** Restricted Stock Units

- I affirm that I have read, understand and agree to be bound by the terms, conditions and obligations contained in the Terms and Conditions and Country-Specific Notices.

- If a Restrictive Covenants Agreement (RCA) is provided to me as part of my award documentation, I affirm that I have read, understand and agree to be bound by the terms, conditions and obligations contained in the RCA that is applicable to me (based on where I am employed) and, further, I understand that all RCAs accepted in connection with, or as a condition to, prior Long-Term Incentive (LTI) awards (if applicable) are superseded by the RCA I am accepting as a condition to this award.

- If I do not accept the Terms and Conditions, Country-Specific Notices and, if applicable, the RCA by the deadline date, I understand that my award will automatically be declined and it will result in the cancellation of any rights, title, and interest in and to the award as of the Grant Date of the award. However, allowing my award to be automatically declined will not affect the applicability or enforceability of any RCA accepted by me in connection with, or as a condition to, prior LTI awards.

- I understand and agree that the award's Terms and Conditions include provisions that may result in the cancellation and forfeiture of some or all of the outstanding portion of the award, and any shares or cash represented by the value of the award, if I terminate employment with the Company without satisfying the applicable vesting requirement(s) as described in the Terms and Conditions and Country-Specific Notices.

Additional documents are available in the Plan & Grant Documents tab on NetBenefits, including the LTI Program Guide (which provides an overview of the LTI program and how it works), the Plan document, prospectus for the Plan, and Employee Information Supplement (which provides generalized non-US tax information).

Please note that after you accept your award documents (described above), the date, time and confirmation number of your acceptance will be displayed below.

M8WE1NVD
03/20/2022 11:59 PM U.S. Eastern Standard Time
ACCEPTED

2022 Grant Agreement