**GOLENBOCK EISEMAN ASSOR BELL & PESKOE** LLP

ATTORNEYS AT LAW | 711 THIRD AVENUE., NEW YORK, NY 10017-4014
T (212) 907-7300 | F (212) 754-0330 | WWW.GOLENBOCK.COM

DIRECT DIAL NO.: (212) 907-7341
EMAIL ADDRESS: PRICARDO@GOLENBOCK.COM

March 23, 2023

**VIA ECF**
The Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Centre Street, Room 2202
New York, NY  10007

      Re:    *Marsh USA Inc. v. Michael Machua Millett*;
              Case No. 22-cv-06656, **Discovery Dispute**

Dear Judge Furman:

      This firm represents the defendant, Michael Machua Millett ("Millett"), in the above-captioned action.  We write pursuant to Your Honor's Individual Rules and Practices in Civil Cases (the "Rules") 1(A), 2(E), 3(A) and Local Civil Rule 37.2 concerning certain deficiencies with the Initial Disclosures (attached hereto as Exhibit A) and responses provided by plaintiff Marsh USA Inc. ("Marsh") to Millett's document requests and interrogatories (attached hereto as Exhibits B and C, respectively).  Millett seeks an order compelling Marsh's compliance with its discovery obligations with regard to those issues, as described below.  Marsh has not responded to Millett's deficiency letter (attached hereto as Exhibit D) or follow-up efforts to meet and confer about the matters Millett raised therein.  Millett does not seek any extension of the deadline for fact discovery in connection with this letter-motion.

**Background and Request for Relief**

      By its Second Amended Complaint ("SAC"), Marsh alleges that Millett, its former insurance broker employee, has breached a Non-Solicitation Agreement and his fiduciary duties by purportedly soliciting and servicing certain of Marsh's clients after he resigned and became affiliated with a new employer and, "upon information and belief", breached confidentiality agreements he executed with Marsh and his fiduciary duties by purportedly using or disclosing Marsh's confidential information.  (Doc. 60 ¶¶ 98, 105, 112).

      On November 4, 2022, the Court entered a Civil Case Management Plan and Scheduling Order that required all initial document requests and interrogatories to be served by December 9, 2022 and all fact discovery to be completed by March 10, 2023.  (Doc. 58 ¶¶ 8(b), 9(a-b).)  On December 9, 2022, Millett timely served his document requests and interrogatories.

On January 13, 2023, the Court granted Marsh's request to extend the fact discovery deadline and the expert discovery deadline by 30 days to April 10, 2023 and May 24, 2023, respectively. (Doc 65.) At Marsh's further request, the undersigned agreed as a courtesy to extend Marsh's deadline for responding to Millett's written discovery requests from January 9, 2023 to February 14, 2023. The parties exchanged document productions that same day.

On March 3, 2023, I wrote Marsh's counsel requesting to meet and confer by March 8, 2023 about its specified discovery deficiencies. I followed up on March 9, 2023 and also offered to meet and confer by phone. On March 10, 2023, Marsh's counsel responded that they were "working on a response to [my] March 3 letter, and we expect to respond substantively next week." Marsh has not responded to date, thereby necessitating this letter-motion. Millett has noticed 4 depositions the week of April 3, 2023; Marsh has noticed none.

### Deficiencies with Marsh's Initial Disclosures and Written Discovery Responses

Initial Disclosures. Rule 26(a)(1)(c) requires Marsh to disclose "*a computation of any category of damages* claimed by the disclosing party". *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (emphasis in original). Courts applying the directives in *Design Strategy* have stated that Rule 26(a)'s reference to a computation "means 'computing in dollars how much the disclosing party claims for each category of damages' with supporting analysis *based on information reasonably available to the party at the time of such disclosures*." *Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 2022 WL 1204562, at *1 (S.D.N.Y. Apr. 22, 2022) (emphasis added). This obligation is an ongoing one that requires timely supplementation of a plaintiff's disclosures based on new or additional information. *See id.*

Marsh commenced this action on August 5, 2022, and the information concerning any "lost business" has been exclusively within Marsh's control since then. Yet Marsh's damages disclosures do not identify *any* "category" of damages that it seeks to recover in this action, much less provide a computation based on information reasonably available to Marsh at the initial disclosure date and now. Indeed, the entirety of Marsh's damages disclosure states: "Plaintiff will seek all damages, including attorneys' fees and costs, available to it under the claims set forth in the Second Amended Complaint." The SAC provides only a vague, general statement that Marsh has suffered damages in the form of attorney's fees for this litigation, and "lost business in an amount to be proven at trial." Marsh's vague and evasive "disclosure" is clearly deficient under Rule 26. Accordingly, Millett requests that the Court compel Marsh to identify both: (i) the *category or categories* of damages it seeks; and (ii) a *computation* of the amount of damages Marsh is claiming and intends to seek, including the methodologies through which Marsh intends to compute or establish such damages. Marsh must also produce at this time all available *documents and other evidentiary material* on which its claimed damages computation is based. *See Design Strategy*, 469 F.3d at 295-96.

Interrogatory No. 16. Through this interrogatory, Millett sought substantially the same information to which he is entitled under Rule 26(a). Marsh has merely repeated the same defective response from its Initial Disclosures. Specifically, outside of its boilerplate objections, Marsh responded that "*Plaintiffs will seek damages, including attorney's fees and costs, to it under the claims set forth in the Second Amended Complaint. Plaintiff's economic damages may*

*require one or more expert witnesses to calculate.*" Marsh's response is defective. As a decision that was cited with approval in *Design Strategy* explained, "plaintiff should provide more than a lump sum statement of the damages allegedly sustained." The court observed that while the "meaning of 'category' of damages is not clear," it "requires more than merely the broad types of damages" a plaintiff may seek for various causes of action. *City & Cnty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 220 (N.D. Cal. 2003). Similarly, here, Millett is entitled to know the damages that, based on the information reasonably available to it at this time, Marsh claims to have suffered as a result of the alleged loss of each of its clients and prospective clients or prospective business, the methodology for such calculations, and all supporting information and documents substantiating the methodology and calculation.

Requests for Production Nos. 10, 35, 45, and 46. Millett's document requests include a number of requests that similarly seek documents to which Millett is entitled concerning Marsh's claimed damages, its damages theories, and computation of damages, including the method, underlying data, and any other documents upon which Marsh intends to rely in calculating the damages it seeks in this lawsuit. *See* RFP Nos. 10, 35, and 45-46. Marsh provided the same answers it gave to Interrogatory No. 16 – *i.e.*, "Plaintiffs will seek damages, including attorney's fees and costs, available to it under the claims set forth in the Second Amended Complaint. Plaintiff's economic damages may require one or more expert witnesses to calculate." While we understand that Marsh may require an expert to finalize its theories and calculations, documents concerning its revenues, profits, etc., for any alleged lost clients or future business – or information from which such losses could be calculated – are certainly relevant, have long been available to Marsh, and are exclusively within its control.

Requests for Production Nos. 36-44. Marsh has indicated that it would be entitled to damages not only for lost revenue or profits associated with any actual clients that it lost as a result of any contractual violations by Millett, but also based on (i) the alleged loss of potential D&O run-off insurance from a SPAC that had previously placed D&O IPO insurance through Marsh and (ii) the alleged loss of potential opportunities to place or procure insurance business for the target company of a de-SPAC transaction where Marsh had previously placed D&O IPO insurance for the SPAC involved in the de-SPAC transaction. Even though Millett disagrees that these are viable damages theories, the requested information is relevant based on Marsh's apparent intention to rely upon them.

Defendant's RFP Nos. 36-44 are specifically targeted at these theories, the profits and revenue that Marsh may claim in connection with them, and the extent to which any such alleged damages are capable of proof with the requisite level of reasonable certainty (*e.g.*, to substantiate the likelihood of an ongoing business relationship, documents bearing on anticipated revenues and profits from such clients, historical data measuring anticipated future business and revenues from particular clients or classes of clients, *etc.*). Marsh has objected to these requests, however, on the grounds that they are not relevant without explaining its basis for this objection. If the reason is because Marsh will not be pursuing the damages theories that we have identified or similar ones, then Marsh should be compelled to confirm that is the reason for its relevance objection.

4449360.1

We thank the Court for its attention to this matter.

        Respectfully submitted,

        GOLENBOCK EISEMAN ASSOR BELL
          & PESKOE LLP


        /s/ S. Preston Ricardo
        S. Preston Ricardo


cc:    Counsel of Record (via ECF)

4449360.1